# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO 1:18CR00025 |
| ) | |
| TERRY MELVIN DALTON, et al ) | |
| ) | |
| Defendant. ) | |

## SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

**COMES NOW** the defendant, Terry Melvin Dalton by counsel, and respectfully submits the following Sentencing Memorandum in support of his request for a downward variance of his sentencing guidelines pursuant to U.S.C. § 3553.

On March 6, 2019, Terry Melvin Dalton pled guilty to Counts One, Seven and Eight of the Indictment, in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(b)(1)(A), 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(C), 21 U.S.C. § 841(a)(1)(2) and 21 U.S.C. § 841(b)(1)(C), respectively.  The Court, in attempting to determine the appropriate sentence in this matter, is guided by the factors enumerated in 18 U.S.C. § 3553(a)(2) and must impose a sentence no greater than that sufficient to reflect the serious of the offense, promote respect for the law, provide just punishment for the offense; afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant and provide the defendant with education, vocational training, medical care or other correctional treatment in the most effective manner.  U.S. v. Gall, 128 S.Ct. 586 (2007).

Departures or variances from the guidelines range in the sentence must be based upon an "individualized assessment based on the particular facts of the case before it." United States v. Carter, 564 F.3d 325, 330 (4th Cir. 2009).  This should be occasioned by

the Court whether the departure is above, below or within the Guidelines range. Additionally, the Court should consider the person before it as an individual as every case is a "unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996). The Sentencing Guidelines are advisory only. See United States v. Booker, 543 U.S. 220 (2005). The Supreme Court in U.S. v. Gall, 128 S.Ct. 586, rejected mindless uniformity and explicitly recognized that a "deferential abuse-of-discretion standard could successfully balance the need to reduce unjustifiable disparities across the Nation and consider every convicted person as an individual." Id. at 598 n.8. Moreover, simply by "correctly calculat[ing] and review[ing] the guideline range," a judge "necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities." Id. at 599. The Courts serve a critical function in the continued promulgation and modification of the Sentencing Guidelines. In Rita v. United States, 127 S. Ct. 2456 (2007), Justice Breyer described the intended evolution of the Guidelines, saying that the Commission's work is "ongoing," that it "will" collect statements of reasons when district courts impose non-guideline sentences, that it "may" obtain advice from prosecutors, defenders, law enforcement groups, civil liberties associations, experts in penology, and others, and that it "can revise the Guidelines accordingly." This ideal set forth by Justice Breyer can only be realized if district courts disagree with the guidelines when warranted by policy considerations, and communicate those disagreements to the Sentencing Commission though their sentencing decisions.

## 18 U.S.C. § 3553(a) and the Individualized Assessment of Mr. Dalton

Terry Melvin Dalton is 38 years old having been born on June 15, 1981, in Bristol, Tennessee to Charles Michael Wayne Dalton and Sharon Leigh Keen Dalton. Mr. Dalton reports a good relationship with his parents and his brother. He was married to Summer

Tibbs on March 8, 2000, following a long relationship that dated to their early teens. They have two children together, Terry Hunter Dalton, age 19 and Keelie Dalton, age 16. Mr. Dalton has two other sons, Trystan Gillam, age 11, who resides with his mother and Malakai Dalton, age 8, who historically had resided with Mr. Dalton and his wife, along with their two children, until her incarceration on a drug charge.

Terry Dalton has a long history of recreational drug use and abuse. He began using marijuana at age 13. At age 20, this use had grown to a daily basis. When he was 18 years old he became addicted to prescription opiates following his having been prescribed the same following wisdom tooth extraction. The addiction became so severe that he was treated at a Methadone clinic in West Virginia at the age of 19. At one point, in 2009, he was using 50 to 100 mg of opiates daily. At age 28, following the long usage of opiates at the hands of maltreating physicians, Mr. Dalton migrated to Heroin when his prescribing physicians refused to write any more opiates for him. Dalton suffered three overdoses from Fentanyl laced Heroin and began Methamphetamine use in 2017. He has attempted substance abuse treatment on an inpatient and outpatient basis on at least three occasions. Attempts to arrest the addiction through medication assisted treatment via Subutex spanned more than 7 years and two different clinics. During the course of the last three and one-half years of this treatment leading up to the early part of 2017, Mr. Dalton was drug free. Unfortunately, in early 2017, Mr. Dalton suffered serious injuries in an automobile accident. During a period of sedation ordered by his treating physicians, he was prescribed an intravenous morphine drip. Following this hospitalization, Mr. Dalton found himself engaging in drug seeking behavior once again and returned to using Heroin and Methamphetamine. Terry Dalton is likely yet another casualty of the ongoing national opioid crisis.

Despite his persistent drug addiction, Mr. Dalton has managed his professional life

and vocational training fairly remarkably. He obtained his GED in 2000 and has multiple certifications to operate heavy equipment. He has used these skills while working for two different construction companies and was a successful car salesman for Carl Gregory for nearly eight years. His current financial condition is dire in as much as he has been incarcerated for much of the last two years. He has no assets and liabilities in excess of $14,000. His drug addiction claimed most of his income during the years leading up to his incarceration on this charge. His involvement in this conspiracy was, without question, driven by the necessity to feed the addiction. The defendant would, accordingly, request that the Court recommend him for placement in the Bureau of Prison's RDAP treatment program.

Mr. Dalton's criminal history is reflective of a person suffering the throes of addiction with multiple convictions and several pending charges for domestic assaults, shoplifting, driving under the influence and possession of drugs. His involvement in the instant conspiracy reflects that he was a low, street level dealer selling and purchasing, in many cases from co-defendants, in primarily one-ounce transactions and with no discernable connections to the organizers of the conspiracy.

The PSR reflects that Mr. Dalton's relevant conduct should make him accountable for 433 grams of "Ice" methamphetamine putting his base offense level at 32 pursuant to USSG § 2D1.1(a)(5). Although he pled guilty without an agreement with the Government, it is clear that Mr. Dalton has accepted responsibility for his involvement in these charges. His plea did not contemplate a stipulation that the drugs he was involved in distributing were of such purity that would constitute "Ice." We would assert that Mr. Dalton's base offense level should be substantially lower at level 28 because of the lack of empirical basis the Sentencing Commission utilized in its promulgation of the Sentencing Guidelines as they relate to Methamphetamine in general and, in particular, to Methamphetamine

purity. By tying the Guidelines to the statutory mandatory minimums imposed by Congress, the Commission made the Methamphetamine guidelines excessive in relation to other drug offenses. Further, the application of heightened sentences related to Methamphetamine purity is antiquated in that the average Methamphetamine purity in the country today exceeds 90%. Consequently, the Guidelines harshness as it relates to purity is no longer grounded in fact. As a result, punishment meted out based on drug quantity and purity alone can work perverse sentences for individuals who play lesser roles in the conspiracy. See United States v. Nawanna, 321 F.Supp 3d 943, 955 (N.D. Iowa 2018). We would, respectfully, ask the Court to adopt the rationale employed in Nawanna and assess Mr. Dalton's offense level at 28. He has pled guilty and accepted responsibility and should receive a three level reduction. Accordingly, we would ask the Court to fix his offense level at 25 and assess a guideline range at 100 to 125 months.

As a result of the Commission's corresponding amendments in 1997 following Congress's enactment of the Comprehensive Methamphetamine Control Act of 1996, § 301, Pub. L. No. 104-237, coupled with the subsequently enacted Methamphetamine Trafficking Penalty Enhancement Act of 1998, Publ. L. No. 105-277, 112 Stat. 2681 (1998), methamphetamine distribution is treated far more harshly than any other drug even though it is scientifically less dangerous and addictive than heroin or cocaine.

Street level distributors such as Terry Dalton are easily replaced in the drug trafficking world. There is no evidence that a lengthy prison sentence will deter others or have any crime control effect. In addition, the recommended guideline range of 140 to 175 months is greater than necessary to protect the public from further crimes of Mr. Dalton. The fact that Mr. Dalton is before this Court because of a long-standing drug addiction that has gone without effective treatment cannot be denied. But for the profiteering doctors that negligently and carelessly exposed him to an opioid addiction at

an early age, Mr. Dalton's life would have likely been dramatically different. Effective treatment within the Bureau of Prisons will substantially lessen the likelihood of recidivism by Mr. Dalton. Mr. Dalton has the intelligence, ability and desire to be a productive member of society once effectively treated. The Court should consider the impact of a lengthy sentence on his young children and the residual affect to society from the same. In as much as he is still facing charges in both Tennessee and Virginia state courts from the relevant conduct herein, he would respectfully request that the Court run this sentence concurrent with any state sentence that may be imposed pursuant to U.S.S.G § 5G1.3.

**TERRY MELVIN DALTON**
**- BY COUNSEL -**

*/s/*

*[signature: Jeffrey J. Campbell]*

**JEFFREY L. CAMPBELL**
**Virginia Bar Number: 45247**
**CAMPBELL LAW FIRM, P.C.**
**709 N. Main Street**
**Post Office Box 986**
**Marion, Virginia 24354**
**Telephone No.: (276) 783-8197**
**Facsimile No.: (276) 783-8198**
**E-mail: jeff@campbelllawfirmva.com**

**CERTIFICATE OF SERVICE**

I, Jeffrey L. Campbell, Counsel for Defendant, Terry Melvin Dalton, do hereby certify that I electronically filed the Defendant's Sentencing Memorandum with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Zachery Lee, Assistant United States Attorney for the Western District of Virginia, by


electronic mailing to USAVAW.ECFAbingdon@usdoj.gov and to all other counsel of record, on this the 5TH day of August, 2019.

/s/

[signature]

**JEFFREY L. CAMPBELL**
**Virginia Bar Number: 45247**
**CAMPBELL LAW FIRM, P.C.**
**709 N. Main Street**
**Post Office Box 986**
**Marion, Virginia 24354**
**Telephone No.: (276) 7783-8197**
**Facsimile No.: (276) 783-8198**
**E-mail: jeff@campbelllawfirmva.com**